IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

JIMMY D. JOHNSON,                        )
                                         )
              Plaintiff,                 )
                                         )
       v.                                )          CV 318-007
                                         )
NANCY A. BERRYHILL, Deputy               )
Commissioner for Operations of the Social )
Security Administration, Performing the  )
Duties and Functions Not Reserved to the )
Commissioner of Social Security,         )
                                         )
              Defendant.                 )
_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Jimmy D. Johnson appeals the decision of the Deputy Commissioner for Operations of

Social Security denying his application for Supplemental Security Income ("SSI") under the

Social Security Act. Upon consideration of the briefs submitted by both parties, the record

evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS**

the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final

judgment be **ENTERED** in favor of the Commissioner.

## I.     BACKGROUND

Plaintiff applied for SSI on October 15, 2014, alleging a disability onset date of

September 1, 2006. Tr. ("R."), p. 38. Plaintiff was fifty-three years old on the date he filed his

application, and fifty-five years old at the time of the Administrative Law Judge's decision

("ALJ"). R. 17, 24. Plaintiff applied for benefits based on allegations of human

immunodeficiency virus ("HIV"), back problems, knee problems, and mental problems. R. 17, 60, 68. Plaintiff completed high school and a few courses at a technical college. R. 39, 213. Plaintiff served in the United States Marine Corps from 1980 to 1985, and starting after 2002, Plaintiff worked part time in maintenance by painting and doing small repairs. R. 40-42, 51, 204-205. Additionally, Plaintiff has a significant criminal history, which includes approximately twenty-seven felony convictions. R. 42. In prison, Plaintiff worked in the kitchen, primarily cleaning counters and prepping the kitchen for inspection. R. 45-46. The ALJ found Plaintiff's part time jobs were all under substantial gainful activity levels, and he had no past relevant work history within the past fifteen years. R. 42, 51.

The Social Security Administration denied Plaintiff's applications initially, R. 60-67, and on reconsideration, R. 74-81. Plaintiff requested a hearing before an ALJ, R. 94, and the ALJ held a hearing on February 7, 2017. R. 29-59. At the hearing, the ALJ heard testimony from Plaintiff, who was not represented by counsel, as well as from Kenneth L. Bennett, a Vocational Expert ("VE"). Id. On May 8, 2015, the ALJ issued an unfavorable decision. R. 12-28.

Applying the sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since October 15, 2014, the application date (20 C.F.R. §§ 416.971 *et seq*.).

2. The claimant has the following severe impairment: human immunodeficiency virus (HIV) (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant should avoid work that involves handling food

and pulmonary irritants.  The claimant has no past relevant work (20 C.F.R. § 416.965).

5.    Considering the claimant's age, education, work experience, and Residual Functioning Capacity ("RFC"), there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 416.969 and 416.969(a)).  Therefore, the claimant has not been under a disability, as defined in the Social Security Act, since October 15, 2014, the date of the application was filed (20 C.F.R. § 416.920(g)).

R. 17-24.

When the Appeals Council ("AC") denied Plaintiff's request for review, R. 7-11, the Commissioner's decision became "final" for the purpose of judicial review.  42 U.S.C. § 405(g).  Plaintiff argues the ALJ's decision is not supported by substantial evidence because: (1) the ALJ failed to find Plaintiff is disabled as a result of his HIV; (2) the ALJ erred in finding Plaintiff has not been under a disability since October 15, 2014 because of his prior applications; (3) the ALJ failed to find Plaintiff's HIV met a Listing at step three; and (4) the ALJ incorrectly considered Plaintiff's HIV and other impairments in determining Plaintiff's RFC.  See doc. no. 21 ("Pl.'s Br.").  The Commissioner maintains the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be affirmed.  See doc. no. 24 ("Comm'r's Br.").

## II.    STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards.  Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).  When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's.  Moore v. Barnhart, 405 F.3d 1208, 1211

(11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding judicial review of Commissioner's legal conclusions are not subject to substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

# III.    DISCUSSION

Plaintiff argues the ALJ's decision is not supported by substantial evidence because: (1) the ALJ failed to find Plaintiff is disabled as a result of his HIV; (2) the ALJ erred in finding Plaintiff has not been under a disability since October 15, 2014 because of his prior applications; (3) the ALJ failed to find Plaintiff's HIV met a Listing at step three; and (4) the ALJ incorrectly considered Plaintiff's HIV and other impairments in determining Plaintiff's RFC.  See Pl.'s Br.  The Commissioner argues in response: (1) the ALJ properly evaluated Plaintiff's impairments; (2) those impairments did not meet or medically equal a listed impairment; (3) the ALJ's RFC finding was supported by substantial evidence; and (4) the ALJ properly found Plaintiff was not disabled.  Comm'r's Br., pp. 5-19.

## A.    The Sequential Evaluation Process

The Eleventh Circuit has outlined the five-step sequential process for evaluating a claim for disability benefits as follows:

1.    Is the individual performing substantial gainful activity?

2.    Does he have a severe impairment?

3.    Does he have a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?

4.    Can he perform he past relevant work?

5.    Based on his age, education, and work experience, can he perform other work of the sort found in the national economy?

Phillip v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520).

At step one, if the claimant is doing substantial gainful activity, the process stops, and a claimant is determined to be "not disabled."  Id.  If the claimant is not doing substantial gainful activity, the process proceeds to step two.  Id.  In this case, the ALJ determined Plaintiff had not

engaged in substantial gainful activity since he alleged onset date, R. 17, and moved on to step two.

### B. The ALJ Properly Evaluated Plaintiff's Severe Impairments at Step Two

At step two, the regulations instruct that a severe impairment is one which significantly limits one's ability to perform "basic work activities." 20 C.F.R. § 416.922(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). Basic work activities involve "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.922(b). Examples include:

1. Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

2. Capacities for seeing, hearing, and speaking;

3. Understanding, carrying out, and remembering simple instructions;

4. Use of judgment;

5. Responding appropriately to supervision, co-workers and usual work situations; and

6. Dealing with changes in a routine work setting.

Id.

However, the severity test at step two of the sequential process is designed to screen out only groundless claims. Tuggerson-Brown v. Comm'r of Soc. Sec., 572 F. App'x 949, 950 (11th Cir. 2014) (*per curiam*). The severity test has been described "as a de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working." Stratton v. Bowen, 827 F.2d 1447, 1452 & n.9 (11th Cir. 1987) (citation omitted). As the Eleventh Circuit has explained, "[s]tep two is a threshold inquiry" and "allows only claims based on the most trivial impairments to be rejected." McDaniel v. Bowen, 800 F.2d

1026, 1031 (11th Cir. 1986). If the ALJ finds at least one severe impairment, she proceeds to the third step of the analysis. Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987); see also Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th Cir. 2010) (citing Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984)) (holding ALJ must consider all claimant's impairments, severe and non-severe, in combination at step three and in assessing RFC). An ALJ is not required to find all severe impairments at step two. Tuggerson-Brown, 572 F. App'x at 950-51.

Both parties agree the ALJ correctly determined Plaintiff's HIV qualified as a severe impairment. However, Plaintiff mistakenly believes this finding alone entitles him to an award of benefits. Pl.'s Br., pp. 2-5. As explained above, the step two determination is but a "threshold inquiry," McDaniel, 800 F.2d at 1031, "which only screens out those applicants whose medical problems could 'not possibly' prevent them from working." Stratton, 827 F.2d at 1452 & n.9. Once a claimant satisfies this *minimal* burden, the sequential process must continue to determine whether an award of benefits is appropriate. Thus, the ALJ correctly continued on to the next step after determining Plaintiff's HIV was a severe impairment at step two.

Further, although the ALJ could have stopped after finding one severe impairment, he continued to determine if Plaintiff's other ailments were severe and properly concluded they were not. R. 17-21. Turning first to Plaintiff's back pain, the ALJ found Plaintiff's back pain to be only a minimal limitation and not a severe impairment because imaging of Plaintiff's spine revealed only minimal osteophyte formation and disc narrowing, back pain was not listed as a problem in medical records after October 2014, and he had good strength in his lower extremities. R. 19. The objective medical evidence supports the ALJ's finding. In 2011, Plaintiff complained of back pain and was observed to have moderate non-radiating pain in his lower lumbar area. R. 420. On January 24, 2012, Dr. David J. Walters imaged

Plaintiff's back and found a normal lordotic curve, normal height in vertebral bodies, no fracture or malalignment, minimal ostephyte formation, disc narrowing, and degenerative change at L4-L5. R. 397.

After release from prison in 2014, Plaintiff's back pain was not listed as an active problem. R. 18, 551-552. Plaintiff was not observed to have lost any strength, sensation, or reflexes. R. 580, 584. In 2015, Plaintiff had good strength in his lower extremities, normal reflexes, and no acute focal neurological deficits. R. 725. While in prison during the February 7, 2017 hearing, Plaintiff was performing work detail in the kitchen by wiping down counters and generally "keeping stuff clean." R. 45-46. Plaintiff is also able to take care of his own hygiene. Id. This information shows the ALJ's determination with respect to Plaintiff's back pain is supported by substantial evidence and only a minimal limitation.

Second, the ALJ concluded Plaintiff's knee pain was not a severe impairment and results in only minimal limitations. The ALJ noted Plaintiff was diagnosed with degenerative joint disease ("DJD"), had marginal antalgic gait, and was instructed on the use of a cane to ambulate. R. 19. However, the ALJ also noted Plaintiff's gait improved over time, his knee pain was under good control with medication, he did not need a cane to ambulate, and he did not always use a cane. Id. Thus, the ALJ found Plaintiff's knee pain was only a minimal limitation. Id. The medical record supports the ALJ's determination.

As of December 22, 2011, Plaintiff was diagnosed with degenerative joint disease ("DJD"). R. 401. On that visit, the physician noted Plaintiff had "severe DJD of knee with pain and crepitance with [range of motion] exam." R. 420. However, on January 24, 2012, digital imaging of Plaintiff's knee shows the bones were intact, joint normal, and soft tissue was unremarkable. R. 393, 395. As of December 10, 2015, Plaintiff had only moderate

DJD, a slightly altered gait, and good strength in his legs. R. 725. Also, his knee pain was under good control with medication. R. 726.

Medical records show Plaintiff was instructed on the use of a cane but do not show he had a limited ability to ambulate. To find that a hand-held assistive device, such as a cane, is medically required,

> [T]here must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). . . .

SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996).

Moreover, "SSR 96-9p requires more than generalized evidence of a condition that might require a cane. It requires 'medical documentation *establishing the need* for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed.'" Staples v. Astrue, 329 F. App'x 189, 191 (10th Cir. 2009) (quoting SSR 96-9p); see also Reynolds-Buckley v. Astrue, No. 8:10-CV-1668-T-TGW, 2011 WL 2460919, at *5 (M.D. Fla. June 20, 2011) ("Significantly, the record contains no prescription for a cane, or other indication that the plaintiff requires an assistive device . . . . Since the plaintiff has not provided any [medical documentation establishing the need for a hand-held assistive device and describing circumstances in which device is needed], she has failed to show that the use of a cane is medically required.").

Although instructed on the use of a cane to ambulate, Plaintiff never testified to needing a cane, arrived at doctor's visits without any assistive device, and was tested to have only marginal gait or be within normal limits as early as November 5, 2014. R. 43-45, 580, 583, 663, 731, 742, 898; see also Jacobus v. Comm'r of Soc. Sec., 664 F. App'x 774, 778

(11th Cir. 2016) (finding no error in not considering cane use where plaintiff appeared at medical visit with cane only once and many other times without cane). Plaintiff has not pointed to any supporting medical evidence showing a need for a cane and under what circumstances it should be used. Thus, the ALJ's decision Plaintiff's knee pain was only a minimal limitation and not a severe impairment is supported by substantial evidence.

Third, the ALJ found Plaintiff's claims of low blood pressure to not have sufficient evidentiary support in the medical records, and, therefore, not a severe impairment. R. 19. This finding is substantially supported by the medical evidence. As to Plaintiff's low blood pressure, he was recorded as having low blood pressure following a syncopal episode during November 2015, but, a month later, Plaintiff's blood pressure was normal and no other episodes or problems were noted in the medical records. R. 725. Thus, the ALJ correctly determined Plaintiff's low blood pressure was not a severe impairment.

Lastly, the ALJ found Plaintiff's mental issues were not a severe impairment and only created "mild" limitations. R. 20. The ALJ noted Plaintiff was diagnosed with depression, examined for PTSD, suffered from poor sleep without medication, and received global assessment of functioning ("GAF") scores of fifty-five and fifty. Id. However, the ALJ also noted medical examinations upon release from prison in 2014 showed Plaintiff made normal eye contact, had logical, coherent thought processes, intact memory, cooperative attitude, and was in an "euthymic mood and affect." Id. The ALJ also considered Plaintiff's GAF scores, which could indicate a serious or moderate symptomatology of mental disorder. R. 21. However, the ALJ gave the scores little weight and found them to be outweighed by other opinion evidence. Id.

The ALJ's finding of no severe impairment and only mild limitations from Plaintiff's mental issues is supported by substantial evidence. Plaintiff does not point to any evidence overlooked by the ALJ, and as of December 2015, Plaintiff's depression improved, he was sleeping well, and mental examination findings were normal. R. 897-98. The ALJ also properly gave little weight to Plaintiff's GAF scores. Although GAF scores of fifty and fifty-five could indicate a serious or moderate symptomatology of mental disorder, the ALJ noted GAF scores are only a snapshot of a claimant's condition, subjective to the particular clinician, vary from day to day, and can include factors not relevant to a functional analysis. R. 22. Further, he explicitly stated he considered Plaintiff's scores. Id. Thus, the ALJ's decision to give little weight to Plaintiff's GAF scores and find only a mild limitation from his mental issues is supported by substantial evidence and properly found not to be a severe impairment. In sum, the ALJ properly found Plaintiff's HIV was a severe impairment, and his back pain, knee pain, low blood pressure, and mental issues were not severe impairments.

### C. The ALJ Properly Determined Plaintiff's HIV Did Not Meet a Listing Because There is No Medical Evidence Supporting Such a Finding

At step three of the evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments severe enough to prevent a person from performing any gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). Plaintiff bears the burden of showing that his condition meets or equals a Listing. Castle v. Colvin, 557 F. App'x 849, 852 (11th Cir. 2014) (*per curiam*); Wilkinson *ex rel*. Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987).

In order to show that his impairment meets a Listing, Plaintiff needs to satisfy all of the specified medical criteria; "[a]n impairment that manifests only some of those criteria, no matter

how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (citation omitted). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. §§ 416.920(a)(iii), 416.925.

Plaintiff argues his HIV satisfies Listing 14.11, which provides as follows:

Human immunodeficiency virus (HIV) infection. With documentation as described in 14.00F1 and one of the following:

A.    Multicentric (not localized or unicentric) Castleman disease affecting multiple groups of lymph nodes or organs containing lymphoid tissue (see 14.00F3a);

B.    Primary central nervous system lymphoma (see 14.00F3b);

C.    Primary effusion lymphoma (see 14.00F3c);

D.    Progressive multifocal leukoencephalopathy (see 14.00F3d);

E.    Pulmonary Kaposi sarcoma (see 14.00F3e);

F.    Absolute CD4 count of 50 cells/mm$^3$ or less (see 14.00F4);

G.    Absolute CD4 count of less than 200 cells/mm$^3$ or CD4 percentage of less than 14 percent, and one of the following (values do not have to be measured on the same date) (see 14.00F5):

    1.    BMI measurement of less than 18.5; or

    2.    Hemoglobin measurement of less than 8.0 grams per deciliter (g/dL);

H.    Complication(s) of HIV infection requiring at least three hospitalizations within a 12-month period and at least 30 days apart (see 14.00F6). Each hospitalization must last at least 48 hours, including hours in a hospital emergency department immediately before the hospitalization; or

I.    Repeated (as defined in 14.00I3) manifestations of HIV infection, including those listed in 14.11A-H, but without the requisite findings for those listings (for example, Kaposi sarcoma not meeting the criteria in 14.11E), or other manifestations (including, but not limited to, cardiovascular disease (including myocarditis, pericardial effusion, pericarditis, endocarditis, or pulmonary arteritis), diarrhea, distal sensory polyneuropathy, glucose intolerance, gynecologic conditions (including cervical cancer or pelvic inflammatory disease, see 14.00F7), hepatitis, HIV-associated dementia, immune reconstitution inflammatory syndrome (IRIS), infections (bacterial, fungal, parasitic, or viral), lipodystrophy (lipoatrophy or lipohypertrophy), malnutrition, muscle weakness, myositis, neurocognitive or other mental limitations not meeting the criteria in 12.00, oral hairy leukoplakia, osteoporosis, pancreatitis, peripheral neuropathy) resulting in significant, documented symptoms or signs (for example, but not limited to, fever, headaches, insomnia, involuntary weight loss, malaise, nausea, night sweats, pain, severe fatigue, or vomiting) and one of the following at the marked level:

1.    Limitation of activities of daily living;

2.    Limitation in maintaining social functioning; or

3.    Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 14.11. As indicated by the ALJ's finding at step two, Plaintiff did have HIV with documentation as required under 14.00F, but further determined Plaintiff did not meet Listing § 14.11 to be considered disabled at step three. Id.; R. 21.

Plaintiff contends the ALJ erred by not finding Plaintiff was disabled at step three because his HIV satisfies Listing 14.11. Pl.'s Br., p. 2. However, the regulation clearly states a claimant must have HIV and "one of the following" section criteria. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 14.11. The Listing of Impairments describes impairments severe enough to prevent a person from performing any gainful activity, Davis, 985 F.2d at 532, a standard significantly higher than the minimal showing of any interference with an individual's

ability to work considered at step two, see Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987) (describing step two standard). Thus, there is no inconsistency between the ALJ finding a severe impairment at step two, but then concluding Plaintiff's severe impairment of HIV was not severe enough to satisfy a Listing at step three.

Further, the medical record shows the ALJ's decision is supported by substantial evidence. Although Plaintiff does not cite which subsection of Listing 14.11 he claims to meet or is medically equal to and does not identify any specific evidence overlooked by the ALJ in coming to his conclusion, Pl.'s Br., pp. 1-7, the Court examines the ALJ's findings and medical records pertaining to each Listing.

First, the ALJ's determination that Plaintiff does not meet any of the enumerated conditions in Listing 14.11(A) to (H) is supported by substantial evidence. See 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 14.11 (A)-(H). The ALJ reviewed the evidence thoroughly and found none of Plaintiff's impairments met any of the criteria under § 14.11. R. 22. Plaintiff does not point to any evidence overlooked by the ALJ, and there is no medical documentation showing Plaintiff is suffering from any of the enumerated conditions specified in Listing 14.11. See id. at (A-E). There is no documentation showing Plaintiff was hospitalized three times within one year for more than forty-eight hours each time. Id. at (H). Also, Plaintiff's absolute CD4 count was not low enough to meet the Listing. See id. at (F)-(G). Medical records show Plaintiff's absolute CD4 number never dipped below the amounts listed under § 14.11(F) and (G). R. 362, 365, 368, 372, 375. Thus, Plaintiff failed to show how he met any of the conditions specified in this Listing.

Second, the ALJ correctly found Plaintiff's impairments do not satisfy section (I) because the medical records show Plaintiff's HIV related ailments had a minimal effect on Plaintiff and

did not limit his daily activities, social functioning, or ability to complete tasks timely. <u>See</u> 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 14.11(I). Section (I) is a catch-all provision satisfied when HIV repeatedly manifests itself in a way that limits daily activities, social functioning, or ability to complete tasks timely. <u>Id.</u> The only ailments documented by Plaintiff that are possibly caused by his HIV are knee pain, back problems, low blood pressure, and neuropathy. R. 17. The ALJ correctly found the evidence does not show these ailments are manifestations of Plaintiff's HIV, and therefore, those conditions could not meet section (I).

As explained in § III.B., <u>supra</u>, the ALJ properly found Plaintiff's back pain, knee pain, and low blood pressure to be non-severe impairments. Further, there is no medical documentation pointing to those conditions being caused by Plaintiff's HIV. Plaintiff likewise does not cite to any medical documentation stating his HIV has repeatedly manifested itself in these conditions, let alone limited his daily activities, social functioning, or ability to complete tasks timely. Plaintiff does allege his HIV has caused neuropathy. R. 22. However, the ALJ found there was not sufficient evidentiary support in the medical records to support this allegation. R. 22. This finding is substantially supported by the medical evidence. As to Plaintiff's neuropathy, recent medical examinations show Plaintiff was not suffering from any symptoms of neuropathy such as numbness, weakness, or loss of sensation. R. 574. Thus, Plaintiff's neuropathy did not show any "significant, documented symptoms or signs," let alone limit his daily activities, social functioning, or ability to complete tasks. Thus, there is not support for Plaintiff's allegation his HIV caused neuropathy. In sum, there is no evidence to support Plaintiff satisfied Listing § 14.11, and, thus, the ALJ's decision with respect to step three is supported by substantial evidence.

**D. The ALJ Properly Determined Plaintiff's RFC Because Plaintiff Only Suffered from Minimal Limitations**

**i. Step Four Framework for Formulating Plaintiff's RFC**

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) & 416.920(a)(4)(iv). RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments." Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted). Courts have described RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 870 n.5 (11th Cir. 2012).

Limitations are divided into three categories: (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e., sitting, standing, walking, lifting, carrying, pushing or pulling; (2) non-exertional limitations that impact the ability to meet non-strength job demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations. Baker v. Comm'r of Soc. Sec., 384 F. App'x 893, 894 (11th Cir. 2010) (citing 20 C.F.R. § 404.1569a(b)-(d)); see also 20 C.F.R. § 416.969a. When determining a claimant's RFC, the ALJ must consider "all the relevant medical and other evidence." Phillips, 357 F.3d at 1238.

An ALJ must consider all of a claimant's impairments, severe and non-severe, in combination. Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th Cir. 2010) (citing Bowen, 748 F.2d at 635); see also 20 C.F.R. § 404.1545(a)(2) ("If you have more than one

impairment. We will consider all of your medically determinable impairments of which we are

aware, including your medically determinable impairments that are not 'severe,' . . . when we

assess your residual functional capacity."). As one of the Commissioner's policy interpretation

rulings explains,

> In assessing RFC, the adjudicator must consider limitations and restrictions
> imposed by all of an individual's impairments, even those that are not "severe."
> While a "not severe" impairment(s) standing alone may not significantly limit
> an individual's ability to do basic work activities, it may--when considered
> with limitations or restrictions due to other impairments--be critical to the
> outcome of a claim.

SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). That is, in combination with other

limitations, a "not severe" impairment may prevent the return to past relevant work or

narrow the range of other work that may still be available to a claimant. Id.

### ii. The ALJ Properly Considered All Impairments in Formulating the RFC

An ALJ must consider all of a claimant's impairments, severe and non-severe, in

combination. Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th Cir. 2010). Here, the

record reflects the ALJ did just that. Although an ALJ's simple statement that he has considered

a claimant's impairments in combination may suffice, id., the ALJ's opinion reflects that he

discussed Plaintiff's testimony and medical history related to his multiple impairments, which

included Plaintiff's subjective allegations. R. 21-23. The ALJ also stated multiple times he had

either considered "the entire record," "conducted a complete review," or "considered all

symptoms." R. 17, 21. The ALJ found Plaintiff had the RFC to "perform a full range of work at

all exertional levels . . . [except] the claimant should avoid work that involves handling food, and

pulmonary irritants." R. 21. The vocational expert then recommended multiple occupations

Plaintiff could perform in the national economy based on his conditions and limitations. R. 24-

25. The recommended occupations were also capable of being performed by Plaintiff even if he was only approved for medium exertional levels. R. 25. Thus, Plaintiff was found not to be disabled. Id.

Plaintiff argues his conditions conclusively support finding he is disabled. Pl.'s Br., pp. 4-5. However, the ALJ considered all of Plaintiff's impairments and found they only warranted minimal limitations or there was not enough objective medical evidence to establish the existence of a limitation. R. 18-24. Plaintiff's HIV has been "well-controlled on medication," in stable condition, and not caused any physical limitations since his application date. R. 582. Medical evidence does not support any limitation caused by neuropathy because the symptoms are not being exhibited by Plaintiff. R. 574. As explained in § III.B., supra, Plaintiff's back pain, knee pain, low blood pressure, and mental issues were not severe impairments and at most were only mild limitations.

Plaintiff does not specifically argue the ALJ overlooked Plaintiff's subjective complaints of knee pain either at the February 7, 2017 hearing or from medical records in formulating the RFC. However, Plaintiff does seem to argue his knee pain increases with action, showing up to a job using a cane is a "strike against him [being] employed," and his pain in not well managed with medication. Pl.'s Br., p. 4. Despite Plaintiff's arguments, the ALJ did in fact consider Plaintiff's subjective complaints of knee pain, medical documentation of knee problems, and use of a cane to ambulate to formulate Plaintiff's RFC. See R. 18. The Eleventh Circuit has established a three-part standard for evaluating a claimant's subjective complaints. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). The Plaintiff must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom,

or (3) the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction. Id.

When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding."[1] Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995). The ALJ must consider "all evidence, including subjective statements about the intensity, persistence, and functionally limiting effects of pain [as well as] the objective medical evidence, laboratory findings and statements from treating or nontreating sources about how the symptoms affect the claimant in deciding the issue of disability." Jarrell v. Comm'r of Soc. Sec., 433 F. App'x 812, 814 (11th Cir. 2011) (citing 20 C.F.R. § 404.1529(c)(4)).

"Credibility determinations are, of course, for the [Commissioner], not the courts." Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). Moreover, this Court is required to uphold the Commissioner's credibility determination if it is supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980).[2] As the Eleventh Circuit explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.

---

[1] On March 16, 2016, Social Security Ruling ("SSR") 16-3p superseded SSR 96-7p. SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). SSR 16-3p eliminates the use of the term "credibility" and clarifies "subjective symptom evaluation is not an examination of an individual's character." Id. However, the change in terminology does not change the substance of the Court's analysis. See Cates v. Comm'r of Soc. Sec., 752 F. App'x 917 (11th Cir. 2018); Waters v. Berryhill, CV 316-002, 2017 WL 694243, at *6, n.4 (S.D. Ga. Jan. 30, 2017), *report and recommendation adopted by* 2017 WL 693275 (S.D. Ga. Feb. 21, 2017.)

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

<u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (internal quotation marks and citations omitted).

As explained § III.B. <u>supra</u>, the ALJ properly concluded Plaintiff's knee pain was non-severe, and his subjective complaints concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the objective evidence of record. The ALJ found the medical records and testimony of Plaintiff to show he did not need a cane to ambulate. <u>See</u> R. 43-45, 580, 583, 663, 731, 742, 898. Medical records also show Plaintiff's pain was under control with medication, imaging showed no abnormalities, he maintained good strength in lower extremities, had only a slightly altered gait, and his DJD was moderate by December 2015. R. 393, 395, 725-26. Thus, the ALJ had good cause to give little weight to Plaintiff's subjective complaints regarding knee pain. <u>See</u> <u>Sampson v. Comm'r of Soc. Sec.</u>, 694 F. App'x 727, 738-39 (11th Cir. 2017) (holding ALJ articulated good cause to give little weight to doctor's opinion on claimant's mental condition where treatment notes stated mental conditions were treated and controlled by medication); <u>Damone v. Comm'r, Soc. Sec. Admin.</u>, 654 F. App'x 473, 475-76 (11th Cir. 2016) (holding ALJ properly discredited doctor's opinion claimant had debilitating back pain where pain was controlled by medication and diagnostic imaging showed only mild disc disease and bulging). Further, although Plaintiff testified to severe pain and cracking and popping in his knees, he stated he was able to lift roughly fifteen to twenty pounds, stand for thirty minutes without break, and walk 100 yards before stopping. R. 43-45. Thus, as explained in § III.B., <u>supra</u>, and above, any limitation from knee pain was minimal and correctly discredited, and the ALJ properly considered Plaintiff's knee pain in formulating the RFC.

Plaintiff also seemingly argues the ALJ improperly considered Plaintiff's GAF scores. Pl.'s Br., p. 5. However, as explained in § III.B., <u>supra</u>, the ALJ properly determined Plaintiff's mental issues and GAF score only amounted to showing a mild limitation, and, accordingly, gave them little weight. An ALJ does not err by failing to discuss GAF scores in formulating an RFC assessment. Further, as stated in § III.B., <u>supra</u>, GAF scores only provide a snapshot of Plaintiff's condition, vary daily, and include factors not relevant to the RFC analysis. <u>See Thornton v. Comm's, Soc. Sec. Admin.</u>, 597 F. App'x 604, 613-14 (11th Cir. 2015) (finding ALJ's decision formulating RFC to be supported by substantial evidence despite no reference to GAF scores). Thus, the ALJ's decision to give little weight to Plaintiff's GAF scores is supported by substantial evidence and properly considered in formulating the RFC. In sum, the ALJ considered Plaintiff's HIV and all other impairments in combination, and his computation of Plaintiff's RFC is supported by substantial evidence.

## IV.  CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 28th day of May, 2019, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA